# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued December 4, 2009        Decided August 10, 2010

No. 08-1201

TNA MERCHANT PROJECTS, INC.,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

BONNEVILLE POWER ADMINISTRATION,
INTERVENOR

---

On Petition for Review of Orders
of the Federal Energy Regulatory Commission

---

*Brian R. Gish* argued the cause for petitioner. With him on the briefs was *John Cameron*.

*Samuel Soopper*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With him on the brief were *Cynthia A. Marlette*, General Counsel, and *Robert H. Solomon*, Solicitor. *Barbara C. Biddle* and *Jeffrey A. Clair*, Attorneys, U.S. Department of Justice, entered appearances.

*Elizabeth K. Loebach* argued the cause for intervenor

Bonneville Power Administration. With her on the brief was *Mary K. Jensen*.

Before: SENTELLE, *Chief Judge*, and HENDERSON and GARLAND, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*: Chehalis Power Generating, L.L.C., petitions for review of two orders of the Federal Energy Regulatory Commission (FERC).[1] The orders held that the rate schedule Chehalis proposed for supplying reactive power to the Bonneville Power Administration (BPA) constituted a "changed rate" that was subject to the suspension and refund provisions of § 205(e) of the Federal Power Act (FPA), 16 U.S.C. § 824d(e). Chehalis contends that its proposal was for an "initial rate," not a "changed rate," and hence was not subject to suspension or refund. Because the Commission failed to respond to Chehalis' argument that its rate cannot be classified as "changed" since it was not previously filed, we vacate the Commission's orders and remand the case.

---

[1]By order dated January 14, 2009, this court granted a motion to substitute TNA Merchant Projects, Inc., as petitioner in place of Chehalis. TNA owned all the equity interests in Chehalis at the time Chehalis filed the petition for review, but subsequently sold those interests while retaining the rights to the claims made in this proceeding. Hence, TNA and not Chehalis is the entity with an interest in the outcome. Pet'r Br. i. For consistency with FERC's orders and the parties' pleadings, however, we will refer here to the petitioner as "Chehalis."

I

The Chehalis facility is a 520 megawatt electric generating plant located in Chehalis, Washington. The plant is interconnected with the BPA electric transmission system. In February 2005, Chehalis and other independent generators entered into a settlement agreement with BPA laying out a process through which they could seek compensation for supplying BPA with reactive power.[2] Pursuant to the settlement, Chehalis submitted a proposed rate schedule to FERC "set[ting] forth Chehalis' rates for the provision of Reactive Power Service" to BPA. Rate Schedule at 1 (May 31, 2005) (J.A. 10). The letter accompanying the schedule characterized the submitted rates as "initial rates," stating: "[T]he subject of the submitted rates is a new service offered by Chehalis in that it has never sought to charge for this service before. In addition, BPA is not an existing customer of Chehalis for any purpose." Letter from Davis Wright Tremaine LLP to FERC at 6 (May 31, 2005) (J.A. 6).

On July 27, 2005, FERC found that Chehalis' proposed tariff was not an initial rate schedule. "An initial rate schedule," the Commission said, "must involve a new customer and a new service." *Chehalis Power Generating, L.P.*, 112 F.E.R.C. ¶ 61,144, at 61,806 (2005) (hereinafter Suspension Order).

---

[2]The Commission describes reactive power as follows:

Electric power consists of two components. The first component, "real" power . . . , is the active force that causes electrical equipment to perform work. The second component, "reactive" power, . . . is necessary to maintain adequate voltages so that "real" power can be transmitted.

*Southern Co. Servs., Inc.*, 80 F.E.R.C. ¶ 61,318, at 62,080 (1997).

"Chehalis," however, "has been providing reactive power to BPA pursuant to an interconnection agreement, albeit without charge. Thus, the proposed rates for reactive power . . . are not initial rates, but are changed rates." *Id.* at 61,807. This finding was significant because § 205(e) of the FPA authorizes FERC to suspend changed rates and make them effective subject to refund, but does not permit it to do the same for initial rates. 16 U.S.C. § 824d(e); *see Southwestern Elec. Power Co. v. FERC*, 810 F.2d 289, 291 (D.C. Cir. 1987) (holding that § 205 "empowers the Commission to exercise suspension and refund authority only over filings legitimately characterized as changed rates; as to initial rates, the Commission's ratemaking powers are purely prospective" (citing *Middle South Energy, Inc. v. FERC*, 747 F.2d 763, 772 (D.C. Cir. 1984))). Exercising its authority under § 205(e), FERC accepted Chehalis' filing, "suspend[ed] it for a nominal period, to become effective August 1, 2005 . . . subject to refund," and established "hearing and settlement judge procedures." Suspension Order, 112 F.E.R.C. at 61,807.

On August 26, 2005, Chehalis moved for rehearing, arguing that FERC had wrongly characterized the rate schedule as "changed" rather than "initial." Req. for Reh'g at 4-6. Of particular pertinence to this appeal, Chehalis argued (among other things) that FERC's § 205(e) authority extends only to rates described in § 205(d), which, in turn, only encompasses changes to rates described in § 205(c). *Id.* at 5. And § 205(c), Chehalis contended, only covers rates that have been filed with the Commission. *Id.* Because Chehalis had not previously filed any rates with FERC for providing reactive power to BPA, it contended that the proposed rates fell outside FERC's authority under § 205(e).

On December 15, 2005, FERC denied Chehalis' request for rehearing, *Chehalis Power Generating, L.P.*, 113 F.E.R.C.

¶ 61,259 (2005) (hereinafter Rehearing Order), once again ruling that the proposed rate schedule contained changed rates. *Id.* at 62,025. Emphasizing the "latitude that the Commission has to interpret what constitutes a changed rate versus what constitutes an initial rate," FERC held that its "well-settled precedent [established] that an initial rate is one that provides for a new service to a new customer." *Id.* Applying this definition, FERC determined that, because "prior to [submitting its proposed rate schedule] . . . Chehalis had been providing reactive power to BPA pursuant to its interconnection agreement[,] . . . it is not now providing a new service nor is it now providing service to a new customer." *Id.*

This petition for review followed.

## II

We have jurisdiction to review FERC's orders pursuant to § 313(b) of the FPA. 16 U.S.C. § 825*l*(b). The orders are subject to reversal if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see ExxonMobil Gas Mktg. Co. v. FERC*, 297 F.3d 1071, 1083 (D.C. Cir. 2002). To the extent Chehalis is challenging FERC's interpretation of the meaning of FPA § 205(e), we review that interpretation under the familiar two-step framework of *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984); *see ExxonMobil Gas Mktg.*, 297 F.3d at 1083. Under that framework, "[i]f the intent of Congress is clear, . . . [a court] must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842-43. But "if the statute is silent or ambiguous with respect to the specific issue," the court must uphold the agency's interpretation as long as it is reasonable. *Id.* at 843.

Chehalis advances a host of grounds for reversing the Commission's orders. First, it contends that there is "no evidence in the record as to whether Chehalis had been providing any reactive power prior to filing its rate schedule," and hence no support for regarding the schedule as anything other than "initial." Pet'r Br. 20. Second, it argues that, regardless of whether it had previously supplied reactive power to BPA, it had "never before charged or collected one cent of revenue for the provision of reactive power," and "BPA had never been [its] customer . . . for any power service." *Id.* at 17. Thus, its rate filing fits FERC's definition of an initial rate as a "new service to a new customer." *Id.* Third, Chehalis maintains that, to the extent consumer protection concerns drove FERC to expand its interpretation of what constitutes an initial rate under FPA § 205, amendments to FPA § 206 now provide "virtually the same refund protection . . . for an initial rate . . . as there is for a changed rate," thus giving FERC no reason "to try to stretch the definition of changed rates." *Id.* at 26-27 (citing the Energy Policy Act of 2005, Pub L. No. 109-58, 119 Stat. 594, and the Regulatory Fairness Act, Pub. L. No. 100-473, 102 Stat. 2299 (1988)). Fourth, Chehalis argues that FERC's Suspension Order was not supported by the precedents upon which it relied. *Id.* at 24-25 (contending that *Calpine Oneta Power, L.P.*, 103 F.E.R.C. ¶ 61,338 (2003), was wrongly decided, and that *WPS Canada Generation, Inc.*, 103 F.E.R.C. ¶ 61,193 (2003), *Florida Power & Light Co.*, 65 F.E.R.C. ¶ 61,411 (1993), and *Florida Power & Light Co. v. FERC*, 617 F.2d 809 (D.C. Cir. 1980), are inapposite).

In the proceedings below, FERC responded to these arguments. First, the Commission found that "Chehalis ha[d] been providing reactive power to BPA pursuant to an interconnection agreement," Suspension Order, 112 F.E.R.C. at 61,807, a point it now contends is made plain by the text of Chehalis' proposed rate schedule, Resp't Br. 13. Second, the

Commission answered Chehalis' claim that a service being provided at no cost cannot qualify as an initial rate by noting that its precedents define initial rates as requiring both "a new customer and a new service." Suspension Order, 112 F.E.R.C. at 61,806-07 & n.9. Consistent with its decision in *Calpine Oneta Power, L.P.*, 103 F.E.R.C. at 62,282-83, the Commission held that Chehalis' prior provision of reactive power to BPA -- even at no cost -- means that it was not proposing to provide a new service. Third, the Commission noted that, notwithstanding the amendments to FPA § 206, "a fundamental difference still exists" between § 205 and § 206. Rehearing Order, 113 F.E.R.C. at 62,025 n.18. On appeal, FERC further argued that its decision to proceed under § 205 made the petitioner's arguments concerning § 206 irrelevant. Resp't Br. 17. Finally, FERC maintained that none of the precedents Chehalis cited were in conflict with the orders at issue here. To the contrary, it argued -- as it did below -- that *Calpine Oneta Power* was directly on point. *Id.* at 18-19.

We need not determine who has the better of any of these four arguments because Chehalis also advanced a fifth, substantial argument that the Commission entirely failed to address. FERC's Rehearing Order described this argument as follows: "[B]ecause [Chehalis] did not file a rate schedule pursuant to section 205(c) for the reactive power it previously provided for no charge under the BPA interconnection agreement, it maintains that there can be no rate change under the FPA." Rehearing Order, 113 F.E.R.C. at 62,024. Chehalis' argument began with the text of § 205(e), which limits FERC's power to suspend rates and order refunds to "any such new schedule." 16 U.S.C. § 824d(e). As we recognized in *Middle South Energy*, "the use of the iterative adjective 'such' indicates that this language is understandable only by reference to the sole prior reference in section 205 to 'new schedule:' this reference is contained in section 205(d)." 747 F.2d at 768. Section 205(d)

declares that "no change[s] shall be made . . . in any such rate" except after filing "new schedules." 16 U.S.C. § 824d(d). Chehalis argued that the "such rate[s]" referred to in § 205(d) are, in turn, the "rates" discussed in the preceding section, § 205(c). 16 U.S.C. § 824d(c). And that section states: "[E]very public utility shall file with the Commission . . . schedules showing all rates and charges for any transmission or sale subject to the jurisdiction of the Commission." *Id.* Connecting the dots back from § 205(e) to § 205(d) to § 205(c), Chehalis argued that the only rates that are subject to § 205(e)'s suspension and refund provisions are those that change a rate already on file with FERC. *See* Req. for Reh'g at 4-6.

It is undisputed that Chehalis did not file a rate schedule for reactive power before it filed the one at issue in this case. In particular, the parties agree that neither Chehalis nor BPA filed the interconnection agreement between the two entities. *See* Pet'r Br. 19; Oral Arg. Recording 17:16-17:20. There is dispute, however, as to whether the interconnection agreement *should have been* filed. Chehalis maintains that it was not required to file the agreement. Pet'r Br. 19, 21; *see* Rehearing Order, 113 F.E.R.C. at 62,024 (noting Chehalis' argument that "the interconnection agreement is a BPA interconnection agreement and is not a Chehalis rate schedule"). FERC's counsel argues that the agreement should have been filed and, further, that that is sufficient reason for regarding the proposed rate as a change from a previous rate. *See* Oral Arg. Recording at 17:17-17:23.

A fatal flaw in this argument is that it was not the rationale the Commission gave in its orders. We, of course, "cannot 'accept appellate counsel's post hoc rationalizations for agency action'; for an agency's order must be upheld, if at all, 'on the same basis articulated in the order by the agency itself.'" *Fed. Power Comm'n v. Texaco, Inc.*, 417 U.S. 380, 397 (1974)

(quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168-69 (1962) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947))).  In the Rehearing Order,  FERC acknowledged Chehalis' argument that a rate cannot be classified as "changed" unless it was previously filed and that Chehalis had never filed a rate for the provision of reactive power to BPA.  *See* Rehearing Order, 113 F.E.R.C. at 62,024.  But it did not respond by saying that the interconnection agreement should have been filed and that "should have been" filed is sufficient.  *See* Oral Arg. Recording at 17:35-17:47 (concession by FERC counsel). Indeed, FERC did not respond to Chehalis' argument at all. Instead, it merely noted that this Circuit has "agreed to defer to the Commission's technical expertise to determine what rates are changed rates and what rates are initial rates, 'unless the Commission's judgment is unreasonable or cannot be rationally reconciled with the terms of the Act.'"  Rehearing Order, 113 F.E.R.C. at 62,025 (quoting *Florida Power & Light*, 617 F.2d at 814-15).

The FPA does not define initial or changed rates.  *Florida Power & Light*, 617 F.2d at 814.  Thus, although we will defer to a reasonable definition by the Commission, we cannot defer to one that is unexplained.  *See Southeast Alabama Med. Ctr. v. Sebelius*, 572 F.3d 912, 920 (D.C. Cir. 2009).  "Until [FERC] provides such an explanation," this court "cannot evaluate whether the [Commission's] interpretation of the statute is reasonable within the meaning of *Chevron* step two." *Id.* (quoting *Kidney Ctr. of Hollywood v. Shalala*, 133 F.3d 78, 88 (D.C. Cir. 1998)).  Accordingly, we vacate FERC's orders and remand the case for the Commission to provide an explanation if it can.  *See Kidney Ctr.*, 133 F.3d at 88.

III

For the foregoing reasons, the petition for review is granted, and FERC's orders are

*Vacated and remanded.*