# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued March 21, 2017             May 19, 2017

No. 13-1008

TNA MERCHANT PROJECTS, INC.,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

BONNEVILLE POWER ADMINISTRATION,
INTERVENOR

Consolidated with 15-1320, 16-1009

On Petitions for Review of Orders of the
Federal Energy Regulatory Commission

*James K. Mitchell* argued the cause and filed the cause for petitioner.

*Susanna Y. Chu*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With her on the brief was *Robert H. Solomon*, Solicitor.

*J. Courtney Olive*, Special Assistant U.S. Attorney, Bonneville Power Administration, argued the cause for

intervenor. With him on the brief was *Jennifer A. Gingrich*, Attorney Advisor. *Barbara C. Biddle* and *Jeffrey A. Clair*, Attorneys, U.S. Department of Justice, and *Mary K. Jensen*, Attorney, Bonneville Power Administration, entered appearances.

Before: PILLARD, *Circuit Judge*, and EDWARDS and SENTELLE, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: In 2008 the Federal Energy Regulatory Commission ("FERC" or "Commission") invoked Section 205 of the Federal Power Act (the "Act" or "FPA") to order Chehalis Power Generating, L.P., ("Chehalis") to refund a portion of the rates it had charged a customer because they were not just and reasonable. Several years later, FERC had second thoughts. It determined that Chehalis should not, after all, have been required to pay these funds and held that Chehalis ought to recover funds with interest. But Bonneville Power Administration ("Intervenor"), the customer to whom Chehalis had paid the refund, had no interest in voluntarily returning the money. Chehalis sought relief from FERC by filing a Motion for an Order Requiring Recoupment of Payments. FERC, however, in a perplexing decision, held that it could not order *recoupment* because the Commission's *refund* authority does not extend to exempt public utilities such as the Intervenor Bonneville. We hold that FERC erred when it held that it lacked the authority to grant the Order Requiring Recoupment.

Section 309 of the FPA, which permits FERC to "perform any and all acts . . . [as may be] necessary or appropriate to carry out [the Act's] provisions," 16 U.S.C. § 825h, clearly

affords FERC the authority necessary to make Chehalis whole. In concluding otherwise, FERC looked to §§ 201(f) and 205 which prohibit it from ordering governmental entities, such as Bonneville, to refund "rates or charges" that FERC determines are "not justified." 16 U.S.C. § 824d(e); *see* 16 U.S.C. § 824(f). FERC determined that because it could not require Bonneville to grant "refunds" under § 205, it was also barred from granting "recoupment" of a refund in favor of Chehalis. This reasoning does not hold up. The strictures of §§ 201(f) and 205 place no limits on FERC's ability to grant this form of relief.

FERC clearly had jurisdiction over the subject of this dispute – *i.e.*, the funds that it ordered Chehalis to pay to Bonneville in refunds pursuant to § 205 of the FPA. Therefore, FERC retained the authority to order Bonneville to return the funds when the agency acknowledged that its initial order was mistaken. Section 309 vests the Commission with broad remedial authority, including the authority to grant recoupment when it is justified. And § 201(f) does not limit the authority of FERC to grant relief under § 309 with respect to matters that are beyond the strictures of § 201(f) and § 205. An order of recoupment, as distinguished from an order to refund under § 205, is beyond the strictures of § 201(f) and § 205.

We uphold FERC's determination that, on the record of this case, recoupment of funds by Chehalis is appropriate. We reverse the Commission's determination that the Act does not grant the agency authority to order Bonneville to repay the funds that it should not have received. However, we remand the case to allow the Commission to determine whether it should apportion its recoupment order. FERC amply explained why recoupment is justified in this case, but in assessing the equities the Commission did not consider whether something less than full recoupment might be warranted.

## I. BACKGROUND

Chehalis operates an electric generating plant that is interconnected with the electric transmission system of Intervenor, a federal agency within the Department of Energy. *See TNA Merchant Projects, Inc. v. FERC*, 616 F.3d 588, 589–90 (D.C. Cir. 2010); Br. for FERC at 4. Since the commencement of this litigation, Chehalis's corporate parent, TNA Merchant Projects, Inc., the Petitioner in this case, has sold its equity ownership interests in Chehalis but retained the right to litigate this matter. Br. for Petitioner at 8. For convenience's sake we, like the parties, will refer to Petitioner as Chehalis.

Prior to 2005, Chehalis supplied reactive power to Intervenor pursuant to an Interconnection Agreement that did not provide for Chehalis to be compensated for this service. *TNA Merchant Projects, Inc.*, 616 F.3d at 590. In May 2005, Chehalis filed a proposed rate schedule with FERC, which set forth "Chehalis' rates for the provision of Reactive Power Service," that would allow it to charge Intervenor for its services for the first time. *See id.* (quoting Chehalis Rate Schedule, Joint Appendix ("JA") 10). The accompanying letter informed FERC that these rates were "initial rates" because Chehalis had "never sought to charge for this service before." JA 6.

This initial rate designation was significant. FERC "regulates rates for wholesale interstate sales of electricity pursuant to sections 205 and 206 of the Federal Power Act." *Middle S. Energy, Inc. v. FERC*, 747 F.2d 763, 765 (D.C. Cir. 1984). As relevant here, § 205(a)–(c) require that "all rates for jurisdictional sales of electricity . . . be reasonable and just," that there be no "undue preferences and discrimination among customers," and that sellers file "all rate schedules" with

FERC. *Id.* To ensure that these requirements are met, § 205(e) permits FERC to suspend a rate schedule for up to five months after it is filed so that it can hold a hearing regarding the proposed rates. *See id.* If FERC deems the rates to be "unjust and unreasonable" it "may require refunds of any rates collected" during this time period. *Id.* This refund authority, however, applies only to "changed," as opposed to "initial" rates. *See TNA Merchant Projects, Inc.*, 616 F.3d at 590.

In spite of Chehalis's protestations to the contrary, in July of 2005 FERC found that its proposed rate schedule was a "changed rate[]." Order, JA 101. The Commission reasoned that "[a]n initial rate schedule must involve a new customer and a new service" and Chehalis was not offering either, simply continuing to "provid[e] reactive power to [Intervenor]." *Id.* FERC then exercised its authority under § 205(e) to suspend these rates "for a nominal period, to become effective August 1, 2005 . . . subject to refund." *Id.*; *TNA Merchant Projects, Inc.*, 616 F.3d at 590. FERC denied Chehalis's request for rehearing and, on April 17, 2008, concluded that Chehalis's proposed rates were excessive and ordered it to refund Intervenor "a portion of the revenues it had collected for supplying reactive power service to [Intervenor] from August 1, 2005 through September 30, 2006," an amount totaling approximately $2 million. Order on Rehearing, JA 330.

Chehalis appealed FERC's initial order and denial of rehearing, arguing that its May 2005 proposed rate schedule was not a "changed rate" subject to suspension and refund. *See TNA Merchant Projects, Inc.*, 616 F.3d at 590–91. This court vacated and remanded FERC's orders because we found that FERC had failed to explain why Chehalis was required to file an initial rate schedule when it was providing Intervenor with power *gratis*, a claim which was essential to FERC's argument that Chehalis's May 2005 proposed rate schedule constituted a

changed rate. *See id.* at 592–93. On remand, FERC issued an order addressing this matter, which again held that Chehalis's May 2005 proposed rate schedule constituted a changed rate. *See* Order, JA 251. After FERC denied its request for rehearing, Chehalis once more appealed FERC's determination to this court. *See* Br. for FERC at 8.

Before we had a chance to rule on this matter, however, FERC requested, and was granted, a voluntary remand in order to "more fully consider" the arguments raised in Chehalis's opening brief. Order on Voluntary Remand, JA 296. FERC then issued a new order on October 17, 2013, which reaffirmed its finding that "Chehalis should have earlier filed a rate schedule for its provision of reactive power service, making its later filing . . . a changed rate." *Id.* It noted, however, that its precedents on this point had not been entirely clear and thus stated that its determination that entities should file "rates, terms and conditions for the provision of reactive power service . . . for which there is no compensation" was a prospective policy, inapplicable to Chehalis. *Id.* at 299. Therefore, it reasoned, "it would be appropriate for Chehalis to recover the amounts previously refunded to [Intervenor], with interest." *Id.*

On July 16, 2015, FERC issued a new order addressing both Chehalis and Intervenor's requests for rehearing as well as a motion for an order requiring recoupment of payments filed by Chehalis. *See* Order on Rehearing, JA 319. It denied the parties' requests for rehearing and emphasized that, "after balancing the equities of [this] case," it believed that recoupment would be appropriate because "Chehalis should not be penalized given the need for clarification of the policy governing the filing of rates, terms and conditions for the provision of reactive power service." *Id.* at 328; *see id.* at 325.

In response to Chehalis's motion for an Order Requiring Recoupment, FERC "affirm[ed] [its] prior determination that recoupment of funds by Chehalis would be appropriate," but held that the Act did not "grant [it] authority to order [Intervenor] to repay the funds at issue." *Id.* at 332. In an Order on Rehearing issued on November 19, 2015, FERC reiterated this position. It reasoned that it could not draw on § 309 of the Act to order Intervenor to return Chehalis's refund, as using this provision "to order recoupment would be an overreach, because the Commission's refund authority under section 205 does not extend to exempt public utilities such as [Intervenor] . . . . [and § 309] does not grant the Commission any broader authority than that provided by section 205." Order on Rehearing, JA 339. Chehalis then petitioned this court for review of FERC's July 16, 2015 and November 19, 2015 Orders. This petition was consolidated with two other petitions previously filed by Chehalis, which effectively placed before this court every order issued after our decision in *TNA Merchant Projects, Inc.* described above.

## II.  ANALYSIS

### A.  *Standard of Review*

In general, this court will "set aside a decision [by FERC] only if it is arbitrary and capricious or otherwise contrary to law." *Envtl. Action, Inc. v. FERC*, 939 F.2d 1057, 1061 (D.C. Cir. 1991). FERC's interpretation of the FPA, including its "jurisdictional provisions," however, "enjoy[s] *Chevron* deference." *Nat'l Ass'n of Regulatory Util. Comm'rs v. FERC*, 475 F.3d 1277, 1279 (D.C. Cir. 2007); *see S.C. Pub. Serv. Auth. v. FERC*, 762 F.3d 41, 54 (D.C. Cir. 2014). When FERC has taken action pursuant to its delegated authority under the Act, "unless Congress has directly spoken to the contrary, or FERC has unreasonably or impermissibly interpreted the statute, we

must defer to the Commission's construction of ambiguous provisions of the FPA." *Transmission Access Policy Study Grp. v. FERC*, 225 F.3d 667, 694 (D.C. Cir. 2000).

## B. *FERC Has the Authority to Issue An Order of Recoupment*

As noted above, FERC concluded that it could not "order *recoupment* . . . because the Commission's *refund* authority under section 205 does not extend to exempt public utilities" such as Bonneville. Order on Rehearing, JA 339 (emphasis added). The Commission's refund authority under § 205 does not extend to Bonneville because it is an exempt public utility under § 201(f) of the FPA. FERC thus concluded that because it could not require Bonneville to grant "refunds" under § 205, it was also barred from granting "recoupment" of a refund in favor of Petitioner. This is a tortured interpretation of the statute that finds no support in the words of the Act or in the case law.

To be clear: § 201(f) states that "[n]o provision in [subchapter II] shall apply to, or be deemed to include" certain non-jurisdictional entities, such as Intervenor, "unless such provision makes specific reference thereto." 16 U.S.C. § 824(f). Because § 205 also appears in subchapter II of the FPA and it does not expressly authorize FERC to order "non-jurisdictional entities" to pay refunds, the Commission concluded that § 201(f) bars it from making Chehalis whole.

The case law is clear that § 205, when read in conjunction with § 201(f), bars FERC from ordering a non-jurisdictional entity to provide a *refund* to another entity. *See, e.g.*, *Transmission Agency of N. Cal. v. FERC*, 495 F.3d 663, 673–75 (D.C. Cir. 2007); *Bonneville Power Admin. v. FERC*, 422 F.3d 908, 914–26 (9th Cir. 2005). These decisions are

inapposite, however, because this case does not involve a request for a refund under § 205. This case concerns recoupment, which is an entirely distinct remedy from a refund. *See Black Oak Energy, LLC v. FERC*, 725 F.3d 230, 243–44 (D.C. Cir. 2013). FERC does not doubt that it has the authority to order recoupment, and it does not claim that the authority to do this comes from § 205. Therefore, § 201(f) and § 205, together, do not limit FERC's authority to order a *recoupment* where a non-jurisdictional entity improperly received a refund.

The starting point for our analysis of FERC's authority to issue an order of recoupment in this case must thus be § 309, not § 205. Section 309 permits FERC to "perform any and all acts . . . [as may be] necessary or appropriate to carry out [the Act's] provisions." 16 U.S.C. § 825h. This provision vests FERC with broad remedial authority, and we have held that it allows FERC to "use means of regulation not spelled out in detail [in the Act]." *Niagara Mohawk Power Corp. v. FPC*, 379 F.2d 153, 158 (D.C. Cir. 1967). Obviously, any actions that FERC takes under § 309 must "conform[] with the purposes and policies of Congress" and cannot "contravene any terms of the Act." *Id.* Thus, § 309 cannot be used to supersede specific statutory strictures, such as §§ 201(f) and 205's prohibition on requiring a non-jurisdictional entity to provide a *refund* to another entity. However, beyond strictures of this sort, that plainly limit FERC's authority, § 309 affords the agency broad authority to "remedy its errors" and correct unjust situations. *Xcel Energy Servs. Inc. v. FERC*, 815 F.3d 947, 956 (D.C. Cir. 2016).

FERC says that § 309 does not grant the Commission any broader authority than that provided by § 205. That may be so, but it is beside the point. Section 205, as relevant in this case, addresses *refunds* and the issue here is recoupment. Chehalis is

not seeking a refund pursuant to § 205, so the limits imposed on FERC's § 205 refund authority are not in play.

Our case law makes it clear that both § 309 and FERC's implicit remedial authority under the Act provide the agency with considerable latitude when it is prescribing remedies for violations of the FPA and attempting to undo harms caused by its own mistaken or unlawful acts. A good example is the decision in *Xcel*. In that case, the court addressed a situation in which FERC had improperly permitted the rates filed by a regional transmission organization or "RTO" (an umbrella organization that manages the transmission facilities of its members, which can include both public and non-public utilities) to take effect without securing an agreement that one of its members, a non-jurisdictional entity, would voluntarily "make refunds in the event the Commission determines the rate as filed is not just and reasonable." 815 F.3d at 950; *see id.* at 950–51; *Transmission Agency of N. Cal.*, 495 F.3d at 667. In spite of the fact that FERC admitted that this action was unlawful, it nonetheless held that it lacked the authority to order the RTO to issue refunds due to its longstanding policy that "rate schedules cannot be suspended after they take effect." *Xcel*, 815 F.3d at 952; *see id.* at 955. We rejected this decision, holding that FERC's "position that its section 205 error of law is irremediable beyond prospective relief" appeared to be "irreconcilable with the authority Congress granted it in section 309 to remedy its errors." *Id.* at 956.

FERC argues on appeal that *Xcel* has no bearing on this case because "it addressed the Commission's authority to correct an acknowledged legal error" whereas here the "Commission merely stated that it would be 'appropriate' for Chehalis to recover the refunds it had paid to Bonneville in light of the Commission's policy clarification." Br. for FERC at 19. This is a fairly tortured interpretation of the events that

took place in the proceeding below. Indeed, this claim is hard to square with FERC counsel's cogent defense of the Commission's decision explaining why recoupment *is* appropriate in this case:

> [After FERC sought remand of this case from the court], the Commission clarified its policy regarding the filing requirements for reactive power service. Recognizing that its precedents had not been entirely clear, the Commission determined that, in fairness, its clarified policy should apply prospectively only. Accordingly, the Commission found that it would be appropriate for Chehalis to recover refunds it had issued to Bonneville prior to the agency's policy clarification, thus absolving Chehalis of refund liability arising from the May 2005 filing.

Br. for FERC at 2. This statement recognizes that FERC's regulatory policy was unclear and that it rejected a retroactive application of the new policy because "[a] fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *FCC v. Fox Television Stations*, 132 S. Ct. 2307, 2317 (2012). An agency cannot enforce a rule against a party if it is unduly vague or if the party did not otherwise have fair notice of the rule. *See, e.g.*, *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2167 (2012) (agency's interpretation of an ambiguous regulation will not be upheld if it results in "unfair surprise" to regulated parties). In other words, agencies must provide regulated parties fair warning of the conduct a regulation prohibits or requires. *Id.*

In this case, FERC has conceded that, because the agency's precedents were confusing, Petitioner did not have good reason to know that its rate filing would be treated as a "changed rate"

under § 205 and, thus, be subject to refunds under § 205. These circumstances offer enough, pursuant to *Xcel*, to justify an order of recoupment under § 309. Indeed, FERC's orders make clear it does not doubt that Chehalis is entitled to recoupment; it merely worries that it may not have the authority to order recoupment because of the statutory strictures of §§ 201(f) and 205. As explained above, FERC is wrong with respect to the application of §§ 201(f) and 205 in this case.

The decision in *Xcel* makes it clear that FERC enjoys broad authority when its past actions are determined to be wrong. *See Xcel*, 815 F.3d at 954–56; *Nat. Gas Clearinghouse v. FERC*, 965 F.2d 1066, 1073–75 (D.C. Cir. 1992) (per curiam) (noting with approval the Commission's decision to order "retroactive recoupment of refunds that were found on judicial review to have been improperly ordered"). This authority emanates from an understanding that an "agency, like a court, can undo what is wrongfully done by virtue of its order." *United Gas Improvement Co. v. Callery Props., Inc.*, 382 U.S. 223, 229 (1965). "Without such corrective power, [regulated parties] would be substantially and irreparably injured by FERC errors, and judicial review would be powerless to protect them from much of the losses so incurred." *Nat. Gas Clearinghouse*, 965 F.2d at 1074–75; *see also United Gas Improvement Co.*, 382 U.S. at 229; *Pub. Utils. Comm'n of Cal. v. FERC*, 988 F.2d 154, 162–63 (D.C. Cir. 1993).

The breadth of FERC's remedial authority is also evident in *Black Oak Energy*, in which our court accepted the proposition that FERC may issue an order of recoupment in circumstances that are very similar to those in this case. 725 F.3d at 243–44. In *Black Oak Energy*, an organization, PJM, had accumulated a surplus of funds that it was required to disburse to market participants. *See id.* at 234–35. It took "the first crack" at determining who should receive this surplus and,

in so doing, excluded "virtual marketers" from the list of potential recipients. *Id.* at 235–36. FERC initially approved this proposed distribution system, but later determined that PJM's failure to disburse a portion of the surplus to these marketers was unlawful, and ordered PJM to refund them "surplus allocations . . . amounting to $37 million." *Id.* at 241; *see id.* at 236, 243; *Black Oak Energy, LLC v. PJM Interconnection, LLC*, 128 FERC ⁋ 61,262, 62,221–22 (2009). After PJM paid this refund, however, "FERC took another look at the matter of refunds and changed its view, effectively ordering PJM to recoup the refunds it had paid the virtual marketers." *Black Oak Energy, LLC*, 725 F.3d at 241. On appeal, this court remanded without vacating FERC's recoupment orders because we found it plausible that FERC could correct its failure to explain why recoupment was appropriate in the case "while reaching the same result." *Id.* at 244.

The parallels between this case and *Black Oak Energy* are striking. In both cases, FERC responded to a purported violation of the FPA – PJM's failure to disburse some of the surplus to virtual marketers and FERC's determination that Chehalis's May 2005 rate schedule was subject to review as a changed rate – by ordering a jurisdictional entity to pay a refund. And in each case FERC later changed its mind and determined that the jurisdictional entity should be permitted to recoup the refund it had issued. *Black Oak Energy* thus provides strong support for the position that FERC retained the authority to amend its decision to require Chehalis to refund a portion of its rates and order recoupment. *See Black Oak Energy, LLC*, 725 F.3d at 242.

The Commission has no answer for the decision in *Black Oak Energy*. In its brief to this court, FERC attempts to distinguish *Black Oak Energy* by simply saying that the case "concerned the recoupment of refunds previously ordered by

the Commission, but did not involve governmental entities." Br. for FERC at 18. This is an entirely unsatisfactory answer because it rests on the assumption that Petitioner is seeking a refund under § 205 and, thus, FERC is barred by § 201 from granting any relief. But, as explained above, this case is not about a refund under § 205. It is about FERC's remedial authority under § 309. *Xcel* and *Black Oak Energy* make it clear that FERC has authority to order recoupment in this case.

Intervenor has been a party throughout this case. It would be the height of irony if Intervenor was permitted to urge FERC to order Chehalis to provide them with a refund in the proceeding below and then deny Chehalis the right to recoup these monies after FERC determined they should never have been disbursed in the first place. There is nothing in the statute to indicate that Congress intended such a result.

We thus find that FERC erred in determining that it lacked the authority to issue an order of recoupment. In so holding, we vacate FERC's November 19, 2015 Order on Rehearing and the portion of FERC's July 16, 2015 Order regarding Chehalis's Motion for an Order Requiring Recoupment and remand this case to FERC for further proceedings regarding Chehalis's request for recoupment. FERC clearly had jurisdiction over the funds that it ordered Chehalis to pay to the Intervenor in refunds pursuant to § 205 of the FPA. Therefore, it retained authority under § 309 to order Intervenor to return the funds when the agency acknowledged that its initial order was mistaken.

## C. *Chehalis's Remaining Claims*

Nothing in this decision is meant to disturb FERC's finding that a utility providing reactive power "has an obligation to file a rate schedule," regardless of whether it receives

compensation for this service. Order Denying Rehearing, JA 285–86. Chehalis seeks to challenge FERC's determination on this point, but the matter is not properly before us.

"Courts 'may not decide questions that cannot affect the rights of litigants in the case before them or give opinions advising what the law would be upon a hypothetical state of facts.'" *Daimler Trucks N. Am. LLC v. EPA*, 745 F.3d 1212, 1216 (D.C. Cir. 2013) (quoting *Chafin v. Chafin*, 133 S. Ct. 1017, 1023 (2013)). But that is just what Chehalis would have us do here. *See* Br. for Petitioner at 18–37. Because FERC determined that Chehalis's May 2005 rate schedule was a changed rate in an order issued on July 2005, and denied Chehalis's request for rehearing on this matter in December 2005, FERC determined that it had the authority to require that Chehalis provide Intervenor with the refund at issue in this case. *See TNA Merchant Projects, Inc.*, 616 F.3d at 590. Chehalis paid Intervenor these funds on May 15, 2008. Refund Report, JA 242. We subsequently vacated both of these decisions in 2010. *See TNA Merchant Projects, Inc.*, 616 F.3d at 589. Therefore, the orders that Chehalis now contests have had no impact on its interests. FERC's determination, on remand from *TNA Merchant Projects, Inc.*, that Chehalis should have filed a rate schedule prior to May 2005 occurred long after Chehalis paid the refund. *See* Order on Remand, JA 251–52. And its subsequent decision to exempt Chehalis from this policy by applying it prospectively certainly caused Chehalis no harm. Thus, in the absence of any cognizable injury caused by the orders that it challenges on appeal, we hold that Chehalis lacks standing to contest FERC's determination that the FPA requires the filing of a rate schedule, even when an organization does not charge for the provision of reactive power. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 494–95 (2009).

**D.** *The Scope of Our Remand*

To avoid any confusion going forward, it will be useful for us to summarize the precise terms of this decision. First, we reverse and vacate FERC's determination that it lacks the authority to issue an order of recoupment in this case. Second, we do not disturb FERC's holding that recoupment of funds is appropriate in this case. That holding is now the law of the case. Third, we deny the petitions for review of the remaining orders challenged on appeal. Fourth, we remand the case so that FERC can more carefully balance the equities of this case to determine the amount of recoupment to which Chehalis is entitled.

Our decision in *Black Oak Energy* emphasized that FERC must "consider[] all the [relevant] factors" before concluding "that recoupment [is] the proper path." 725 F.3d at 244. The same principle applies here. On remand, FERC should evaluate the relevant equities, including Chehalis's possible confusion regarding the necessity of filing a rate schedule prior to May 2005 and the fact that it charged Intervenor a rate which FERC deemed to be unjust and unreasonable, when determining how much of the refund Chehalis will be permitted to recoup.

The Intervenor claims that if it is required to return the entire amount that it received in refunds, plus interest, it would unjustly enrich Chehalis by "compensating [it] for reactive power at a rate over 250% of what the just and reasonable rate should have been." Br. for Intervenor at 32. Intervenor also argues that, if Chehalis is correct that the rate was new and so not subject to § 205, Bonneville would have been entitled to a refund under FPA § 206, 16 U.S.C. § 824e, which applies to new as well as changed rates. Section 206 authorizes FERC to examine a new rate and order a refund if FERC determines that it is not just and reasonable. Thus, Bonneville contends, even

if Chehalis could not have predicted that FERC would treat Chehalis's rate filing as a changed rate under § 205, it should have reasonably anticipated that its rate filing would be reviewable under § 206. Under § 206, Intervenor adds, "Chehalis would have owed nearly the same amount of refunds to Bonneville," and Chehalis concedes as much. Br. for Intervenor at 32. We express no views on these claims. We will leave it to FERC to address Intervenor's arguments when it weighs the equities of recoupment on remand.

## III. CONCLUSION

As explained in the opinion above, we grant in part and deny in part Chehalis's petitions for review, and remand this case for further proceedings consistent with this opinion.