# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued November 10, 2008          Decided February 27, 2009

No. 07-1222

CITY OF ANAHEIM, CALIFORNIA, ET AL.,
PETITIONERS

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

CALIFORNIA INDEPENDENT SYSTEM OPERATOR CORPORATION,
ET AL.,
INTERVENORS

---

Consolidated with 07-1319, 08-1021

---

On Petitions for Review of Orders
of the Federal Energy Regulatory Commission

---

*Bonnie S. Blair* argued the cause for petitioners. With her on the briefs were *Ransom E. Davis* and *Margaret E. McNaul*.

*Beth G. Pacella*, Senior Attorney, Federal Energy Regulatory Commission, argued the cause for respondent.

With her on the brief were *Cynthia A. Marlette*, General Counsel, and *Robert H. Solomon*, Solicitor.

Before: TATEL and KAVANAUGH, *Circuit Judges*, and SILBERMAN, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

KAVANAUGH, *Circuit Judge*:  A basic principle of administrative law is that agencies must comply with the requirements and limits contained in the text of applicable statutes.  Courts afford "*Chevron* deference" to an agency's authoritative and reasonable interpretation of an ambiguous statutory provision.  But we give no deference to an agency interpretation that fails to comport with the plain statutory language.  The precise words of the statutory text matter.

This case is a good example.  When the Federal Energy Regulatory Commission receives a complaint under § 206 of the Federal Power Act and finds that the rate charged by an energy supplier is "unjust" or "unreasonable," the Commission "shall determine the just and reasonable rate . . . *to be thereafter observed* and in force, and *shall fix the same by order*."  16 U.S.C. § 824e(a) (emphases added).  That statutory provision prohibits FERC from setting rates *retroactively* in cases governed by § 206(a).

Here, California wholesale electricity generators filed a § 206 complaint alleging that they were under-compensated as a result of the FERC-approved rate they were required to charge to local cities and other electricity purchasers.  FERC agreed and ordered a rate increase requiring the cities to pay more for electricity purchased from those generators.  The controversy arises because FERC applied the rate increase

*retroactively*. Perhaps FERC's retroactivity mandate was well-founded as a matter of policy. But retroactive rate increases of this kind flatly violate the plain language of § 206(a). We therefore vacate the relevant Orders to the extent they allowed retroactive rate increases and remand the matter to FERC.

I

In 2001, California experienced an electricity crisis. In response, the Federal Energy Regulatory Commission imposed what is known as a "must-offer obligation." The must-offer obligation required most wholesale electricity generators serving California markets to supply available electrical capacity – that is, capacity that had not already been contracted for – at specified rates to electricity purchasers.

The must-offer obligation was designed as a temporary measure to deal with the critical energy shortfall. In fact, the must-offer obligation stayed in place for several years. Generators began to object, arguing that the must-offer obligation under-compensated them for the costs of energy production. The compensation shortfall, they said, discouraged their production of new and much-needed energy-generating units.

So on August 26, 2005, electricity generators (through the Independent Energy Producers Association) filed a § 206 complaint with FERC. The complaint alleged both that the must-offer obligation did not justly and reasonably compensate generators and that so-called Reliability Capacity Services Tariff (or RCST) rates should replace the must-offer obligation.

On July 20, 2006, FERC issued an Order in which it agreed with the generators that the must-offer obligation was no longer just and reasonable. But at that time, FERC did not find the proposed RCST rates to be just and reasonable. Rather, FERC stated that it would fix the new rate in the future.

Seven months later, on February 13, 2007, FERC issued Orders determining that modified RCST rates were just and reasonable. FERC also made those rates retroactively effective to June 1, 2006.

Six cities – Anaheim, Azusa, Banning, Colton, Pasadena, and Riverside – have objected that FERC had no legal authority to apply the new rates retroactively.

## II

### A

Section 206 of the Federal Power Act requires FERC to entertain complaints regarding unjust or unreasonable wholesale electricity rates. After finding a rate unreasonable, FERC "shall determine the just and reasonable rate . . . to be *thereafter* observed and in force," and FERC "shall fix" that rate by order. 16 U.S.C. § 824e(a) (emphasis added).[1]

---

[1] The initial sentence of § 206(a) reads in full: "Whenever the Commission, after a hearing held upon its own motion or upon complaint, shall find that any rate, charge, or classification, demanded, observed, charged, or collected by any public utility for any transmission or sale subject to the jurisdiction of the Commission, or that any rule, regulation, practice, or contract affecting such rate, charge, or classification is unjust, unreasonable, unduly discriminatory or preferential, the Commission shall determine the just and reasonable rate, charge, classification, rule,

In its Order of February 13, 2007, FERC determined that the RCST rates were just and reasonable – at which point it made those rates effective *retroactively* to June 1, 2006. FERC cannot square its action with the plain text of § 206(a). On its face, § 206(a) prohibits retroactive adjustment of rates. And not surprisingly, the Supreme Court and this Court have read this language to mean what it says.

In interpreting parallel language in § 5 of the Natural Gas Act, for example, the Supreme Court explained that "the Commission itself has no power to alter a rate retroactively. When the Commission finds a rate unreasonable, it 'shall determine the just and reasonable rate . . . to be *thereafter* observed and in force.' This rule bars the Commission's retroactive substitution of an unreasonably high or low rate with a just and reasonable rate." *Ark. La. Gas Co. v. Hall*, 453 U.S. 571, 578 (1981) (footnote, citations, and internal quotation marks omitted) (emphasis in original).[2]

Our own precedents reinforce the point. In *Electrical District No. 1 v. FERC*, we focused on § 206(a)'s requirement that FERC "fix" new rates, and we held that FERC does not "fix" a rate until the rate is numerically "specified." 774 F.2d 490, 492 (D.C. Cir. 1985). Emphasizing the statutory phrase "to be thereafter observed and in force," we further stated that § 206(a)'s procedures are "not at all ambiguous" and explained that the "moment of required and authorized

_____

regulation, practice, or contract to be thereafter observed and in force, and shall fix the same by order." 16 U.S.C. § 824e(a).

[2] We follow here "the familiar practice of applying interchangeably judicial interpretations of provisions from the Natural Gas Act to their substantially identical counterparts in the Federal Power Act." *NSTAR Elec. & Gas Corp. v. FERC*, 481 F.3d 794, 800 (D.C. Cir. 2007) (internal quotation marks omitted).

Commission action in the present case is to be determined not on the basis of an abstract principle . . . but rather on the basis of the procedures that the statute establishes for adjusting unlawful rates." *Id*.[3]

In *Transwestern Pipeline Co. v. FERC*, 897 F.2d 570 (D.C. Cir. 1990), we elaborated on *Electrical District* and held that FERC can "fix" rates within the meaning of Natural Gas Act § 5 through the announcement of a "rate formula," so long as purchasers can supply their own inputs to the formula and thereby know the numerical rates. *Id*. at 578 (internal quotation marks omitted). In arriving at that conclusion, we carefully heeded *Electrical District*'s analysis of FERC's retroactive ratemaking powers. In particular, we stated that FERC may not "simply announce some formula and *later* reveal that the formula was to govern from the date of announcement (as it had done in *Electrical District*)." *Id*. (emphasis in original).

Finally, in *Towns of Concord, Norwood & Wellesley, Massachusetts v. FERC*, we explained that § 206(a) "allows the Commission to fix rates and charges, but only prospectively." 955 F.2d 67, 72 (D.C. Cir. 1992). We proceeded to note that in prior cases, including *Transwestern*, the Commission had "violated the explicit commands of section 5(a) of the Natural Gas Act, which requires rate changes to be made prospectively only." *Id.* at 75 (citation omitted).

---

[3] *Electrical District* post-dates *Chevron*'s formulation of the Executive Branch's duty to adhere to unambiguous textual provisions. *Chevron USA, Inc. v. NRDC*, 467 U.S. 837 (1984). Even though the decision did not cite *Chevron*, *Electrical District* stated that § 206's procedures "are not at all ambiguous." 774 F.2d at 492. Therefore, we construe *Electrical District* as a binding holding at *Chevron* step one.

B

FERC posits a number of different theories to overcome the text of § 206(a).

FERC suggests that Congress's 1988 decision to add what is now § 206(b) of the Act supersedes the 1985 *Electrical District* decision. But § 206(b) applies in cases where the complainant is a *purchaser* alleging that the rates it paid were too high. That provision permits FERC-ordered refunds "*of any amounts paid . . . in excess of* those which would have been paid under the just and reasonable rate." 16 U.S.C. § 824e(b). By contrast, this case involves a complainant *seller* alleging that the rates it received were too low. In other words, the six cities were not making payments before February 13, 2007, "*in excess of . . .* the just and reasonable rate," which is the statutory precondition for a § 206(b) refund. *Id.* (emphasis added). Rather, the six cities were paying rates to energy generators *below* the just and reasonable rate. And § 206(b) authorizes only retroactive refunds (rate decreases), not retroactive rate increases like those at issue here. Therefore, § 206(b) does not help FERC.

FERC also argues that it complied with the rule against retroactive ratemaking that applies in cases arising out of a separate section of the Federal Power Act – § 205. Section 205 creates a procedure for members of the public to file complaints after public utilities file new proposed rate schedules (as required by the filed rate doctrine). *See* 16 U.S.C. § 824d(d)-(e). Under § 205, the rule against retroactive ratemaking has been interpreted to prohibit FERC from setting rates retroactively before the date that purchasers had sufficient notice of a possible change. The proceedings here, however, began with a complaint filed under § 206.

And § 206 involves an entirely different – and stricter – set of procedures than § 205. The § 205 precedents therefore do not justify FERC's action in this case. *See NSTAR*, 481 F.3d at 800 (§ 205 case); *Consol. Edison Co. of N.Y., Inc. v. FERC*, 347 F.3d 964, 969 (D.C. Cir. 2004) (§ 205 case); *City of Piqua v. FERC*, 610 F.2d 950, 954 (D.C. Cir. 1979) (§ 205 case); *see also Canadian Ass'n of Petroleum Producers v. FERC*, 254 F.3d 289, 299 (D.C. Cir. 2001) (case involving NGA § 4, which is analogous to FPA § 205); *Columbia Gas Transmission Corp. v. FERC*, 895 F.2d 791, 795 (D.C. Cir. 1990) (also applying NGA § 4).

FERC further points to precedents recognizing FERC's power to remedy its own errors after being reversed in court. *See Exxon Co., USA v. FERC*, 182 F.3d 30, 47 (D.C. Cir. 1999); *Pub. Utils. Comm'n v. FERC*, 988 F.2d 154, 162 (D.C. Cir. 1993) ("This court has previously recognized FERC's authority to order retroactive rate adjustments when its earlier order disallowing a rate is reversed on appeal."); *Natural Gas Clearinghouse v. FERC*, 965 F.2d 1066, 1074-75 (D.C. Cir. 1992). But those cases also are not on point: In this case, FERC was not responding to a court decision when it imposed retroactive surcharges.

C

Petitioners' counsel nicely summarized this case at oral argument: To uphold FERC's action here, we would have to find "that there's no difference between the procedural framework of § 205 and the procedural framework of § 206; [] that 'thereafter' in § 206(a) really means any time after the filing of a complaint; that the term 'refund' in § 206(b) really means refund or increase; that 'amounts in excess of' under § 206(b) really means amounts in excess of or less than; [or] that 'prospective' can mean a date many months earlier than

the date of the Commission order fixing a rate." Tr. of Oral Arg. at 25-26.

We decline FERC's invitation to mangle the statute in those myriad ways. In the end, as in the beginning, the plain language of § 206(a) controls. *Cf. Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.") (internal quotation marks omitted); *MCI Telecomm. Corp. v. AT&T Co.*, 512 U.S. 218, 229 (1994) ("an agency's interpretation of a statute is not entitled to deference when it goes beyond the meaning that the statute can bear").

* * *

Our analysis requires vacatur of the challenged FERC orders to the extent they made the FERC rates retroactively applicable to June 1, 2006. That disposition raises a secondary issue on which the parties also disagree. The question remains whether the rates were fixed (i) on February 13, 2007, when FERC said the modified RCST rates were just and reasonable, or (ii) on June 11, 2007, when FERC accepted the final compliance filing. It would not be proper for us to resolve that debate in the first instance. Rather, FERC must address this issue in remand proceedings, in which it may consider and reasonably explain whether the modified RCST rates were fixed by the Order of February 13, 2007, or not until the Order of June 11, 2007 (or perhaps on some other date after February 13, 2007).

In sum, we grant the petitions and vacate the challenged FERC Orders to the extent that they permitted RCST rates for transactions occurring before February 13, 2007. We remand

to FERC for further consideration regarding when the RCST rates became legally fixed.

*So ordered.*