# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued January 15, 2016        Decided March 8, 2016

No. 14-1282

XCEL ENERGY SERVICES INC.,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

OCCIDENTAL PERMIAN LTD., ET AL.,
INTERVENORS

---

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

---

*Stephen M. Spina* argued the cause and filed the briefs for petitioner.

*Jennifer L. Mersing* and *Earle H. O'Donnell* were on the brief for intervenor Occidental Permian Ltd. in support of petitioner.

*Lisa B. Luftig*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With her on the brief were *David L. Morenoff*, General Counsel at the time the brief was filed, and *Robert H. Solomon*, Solicitor.

2

*Carrie L. Bumgarner*, *Matthew J. Binette*, *Andrew T. Swers*, and *Marvin T. Griff* were on the brief for intervenors Southwest Power Pool Inc. and Tri-County Electric Cooperative, Inc.

Before: ROGERS and WILKINS, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*:  Xcel Energy petitions for review of three orders of the Federal Energy Regulatory Commission denying a retroactive refund for unlawful rates.  Southwest Power Pool, Inc., a regional transmission organization, filed a tariff revision pursuant to section 205 of the Federal Power Act to implement the formula rate of a non-jurisdictional participating transmission owner, Tri-County Electric Cooperative, Inc.  To carry out the statutory mandate that rates be just and reasonable, the Commission subjects the revenue requirements of non-jurisdictional participating owners to review under section 205 standards.  Unless there is no material issue, the Commission will either suspend the proposed rates while it conducts a section 205 review or allow the rates to take effect where the non-jurisdictional entity voluntarily agrees to make refunds if the Commission determines the rates are unfair and unjust.  In this instance, contrary to section 205's mandate and Commission precedent, and over formal protests by intervenors, the Commission, despite concluding that the proposed rates may be unjust and unreasonable, allowed them to go into effect without suspension or a voluntary refund commitment by Tri-County.

On rehearing, the Commission admitted its error of law but concluded that the only available remedy was prospective under section 206 of the Federal Power Act.  The Commission stated

that retroactive suspension of the rates would be inconsistent with section 2.4(a) of its regulations barring suspension of a rate schedule after it took effect. We grant the petition in part and remand the case to the Commission.

**I.**

Section 205 of the Federal Power Act ("FPA") mandates that "[a]ll rates and charges . . . demanded, or received by any public utility for . . . the transmission or sale of electric energy subject to the jurisdiction of the Commission . . . shall be just and reasonable, and any such rate or charge that is not just and reasonable is hereby declared to be unlawful." 16 U.S.C. § 824d(a). Section 205(d) provides that unless the Commission otherwise orders, " no change shall be made by any public utility in any such rate, charge, classification, or service, or in any rule, regulation, or contract relating thereto, except after sixty days' notice to the Commission and to the public." *Id.* § 824d(d). Section 205(e) empowers the Commission, on its own initiative or upon complaint, to investigate the lawfulness of a rate in a newly filed schedule, and to suspend the effectiveness of the changed schedule for up to five months. *Id*. § 824d(e). The Commission may also order that increased rates and charges be collected subject to refund so that when the rate schedule goes into effect after suspension, the "interested public utility or public utilities" must refund the amount of the increased rates or charges "found not justified" by the Commission. *Id.*

Under section 206(a) of the FPA, the Commission may institute, on its own motion or upon complaint, an investigation into the rates of public utilities to determine whether the rates are just and reasonable. 16 U.S.C. § 824e(a). Section 206(b) requires the Commission to establish a refund effective date that is no earlier than the date of the publication of its order instituting the investigation on its own motion or the date of the

complaint, as applicable. *Id*. § 824e(b). If the Commission determines upon investigation that a public utility's rates are unjust and unreasonable, the Commission may prospectively fix the just and reasonable rate and order refunds of the difference between the rate charged and the just and reasonable rate for a fifteen-month period that commences on the refund effective date.

In response to the development of regional transmission organizations ("RTOs") and independent system operators ("ISOs"), *see generally Pub. Util. Dist. No. 1 of Snohomish Cty. v. FERC*, 272 F.3d 607, 610 (D.C. Cir. 2001), the Commission determined, in order to carry out section 205's mandate, that the transmission revenue requirements of a non-jurisdictional entity are subject to full review under section 205. The court endorsed this decision to the extent that the Commission "may analyze and consider the rates of non-jurisdictional utilities to the extent that those rates affect jurisdictional transactions," *Pac. Gas & Elec. v. FERC* ("*PG&E*"), 306 F.3d 1112, 1114 (D.C. Cir. 2002), explaining that when reviewing a non-jurisdictional entity's rates as a component of an RTO's rates, the Commission is exercising jurisdiction over the RTO, not over the non-jurisdictional entity, *see id*. The court has also held that the Commission has no authority under section 205 to order a non-jurisdictional entity to make refunds. *See Transmission Agency of N. Cal. v. FERC* ("*TANC*"), 495 F.3d 663, 672 (D.C. Cir. 2007). The Commission thus will accept the RTO's filing of a tariff revision where the non-jurisdictional entity voluntarily agrees to make refunds in the event the Commission determines the rate as filed is not just and reasonable, or the Commission will delay the effective date of the proposed rate while it conducts a section 205 review, unless there is no material issue. *See, e.g.*, *Lively Grove Energy Partners, LLC*, 140 FERC ¶ 61,252, at P 47 & n.59 (2012); *City of Banning*, 136 FERC ¶ 61,134 (2011); *City of Riverside*, 128 FERC ¶ 61,207, at P 26

(2009); *cf. Great River Energy*, 130 FERC ¶ 61,001 (2011).  The petition before the court arises from the Commission's failure to adhere to this established procedure.

Southwest Power Pool, Inc. ("SPP") is an RTO and a "public utility" as defined in the FPA.  *See Sw. Power Pool, Inc.*, 119 FERC ¶ 61,307, at P 11 (2007) ("SPP 2007"); 16 U.S.C. § 824(e).  As an RTO, SPP "administers the provision of open access transmission service on a regional basis across the facilities of" its transmission owning members.  Southwest Power Pool Submission of Tariff Revisions to Incorporate Tri-County Electric Cooperative, Inc. as Transmission Owner (Jan. 31, 2012) ("Tariff Filing").  Its transmission services are divided into regional zones, including the Southwestern Public Service Company Zone ("SPS Zone").  The SPS Zone includes Southwestern Public Service Company ("SPS"), a wholly-owned subsidiary of Xcel Energy Services, Inc. ("Xcel").  Xcel and intervenor Occidental Permian Ltd. are also purchasers of transmission services from the SPS Zone.

On February 1, 2012, SPP filed revisions to its Open Access Transmission Tariff ("OATT") pursuant to section 205 to implement Tri-County's formula rate for transmission service.  According to SPP's submission, Tri-County had become a transmission owner in the SPS Zone and its formula rate would be used to calculate the annual transmission revenue requirement ("ATRR").  Xcel filed a protest, requesting the Commission allow SPP's tariff filing only if Tri-County agreed voluntarily to make refunds or suspend the proposed rates while the Commission conducted a section 205 review.  *See* Motion to Intervene and Protest at 4, 19 (Feb. 22, 2012).  The Commission did neither.  On March 30, 2012, the Commission — despite concluding that there was insufficient evidence to determine whether Tri-County qualified as a "transmission provider" under SPP's OATT, and that the proposed rates may not be just and

reasonable — accepted the tariff revisions for filing, to become effective April 1, 2012 as requested, and established hearing and settlement judge procedures. *Sw. Power Pool, Order Accepting Formula Rate Proposal and Establishing Hearing and Settlement Judge Procedures* ("*Order I*"), 138 FERC ¶ 61,231, at PP 1, 14, 15. The Commission offered no explanation of its departure from its precedent.

Xcel sought rehearing and a stay, and requested expeditious action by the Commission. Xcel Request for Rehearing, Motion for Stay, and Request for Clarification (Apr. 25, 2012) ("2012 Reh'g Request"). It argued that the Commission had clearly erred, contrary to the mandate in section 205 to protect consumers from excessive rates, by never fully reviewing Tri-County's ATRR before allowing SPP's rates to take effect after concluding the proposed rates may be unjust and unreasonable. Except where proposed rates were not contested or there were no issues of material fact, Xcel pointed out that "[a]fter *TANC*, in every case where the Commission has reviewed the costs of a non-jurisdictional utility included in an RTO's or ISO's rate, the Commission has only set those rates for hearing where the non-jurisdictional utility made a commitment to provide refunds." *Id.* at 7 & n.24.[1] Xcel therefore requested that the Commission "reverse its determination to accept the SPP Filing and, instead, . . . suspend it, subject to refund and hearing procedures." *Id.* at 8. Because the Commission erred as a

---

[1] Xcel cited as examples: *City of Azusa*, 138 FERC ¶ 61,049 (2012); *City of Pasadena*, 137 FERC ¶ 61,045 (2011); *City of Riverside*, 136 FERC ¶ 61,137 (2011); *City of Banning*, 136 FERC ¶ 61,134 (2011); *City of Anaheim*, 136 FERC ¶ 61,034 (2011); *Midwest Indep. Transmission Sys. Operator, Inc.* ("*MISO*"), 135 FERC ¶ 61,131 (2011); *City of Pasadena*, 128 FERC ¶ 61,290 (2009); *City of Riverside*, 128 FERC ¶ 61,207 (2009).

matter of law in allowing SPP's rates to take effect without conducting a full section 205 review or otherwise ensuring consumer protection through refunds, Xcel argued that Commission precedent barring retroactive rate suspension on rehearing was not dispositive. *Id.* at 9 n.29. Xcel also sought a stay of *Order I*, stating the SPP tariff filing increased revenue requirements by $1.98 million annually, of which over 97% would be borne by loads taking service under the SPP tariff other than Tri-County, of which about 60% will be borne by SPS and its native load customers. *See id.* at 11; FPA § 313(c), 16 U.S.C. § 825*l*(c); 5 U.S.C. § 705. Xcel noted that "SPP has not yet issued transmission service bills reflecting the Tri-County ATRR." 2012 Reh'g Request at 9 n.29.

On rehearing, the Commission acknowledged that it "erred in allowing SPP's rate proposal for Tri-County's ATRR to go into effect April 1, 2012, without a commitment from Tri-County to refund the difference between the as-filed rate and the rate ultimately found to be just and reasonable by the Commission." *Sw. Power Pool, Order on Rehearing* ("*Order II*"), 142 FERC ¶ 61,135, at P 13 (2013). Further, the Commission acknowledged, "[c]onsistent with Commission policy in other instances involving non-public utilities, without such a refund commitment, the effective date for Tri-County's ATRR should be the date the Commission makes the ATRR effective in its order approving the ATRR following hearing and settlement judge procedures." *Id.* It stated, however, that it lacked jurisdiction to make Tri-County's collected rates subject to refund. *See id.* PP 14–15 (citing *Riverside*, 128 FERC ¶ 61,207, at P 24 (citing *TANC*, 495 F.3d at 673–74); *Midwest Indep. Transmission Sys. Operator, Inc.* ("*MISO*"), 135 FERC ¶ 61,131, at P 72 (2011)). But concluding that it would not be just and reasonable to allow SPP to continue to pass through "Tri-County's proposed rate" before the Commission determined it just and reasonable, the Commission ordered SPP,

pursuant to section 206, to file a compliance filing either removing the tariff sheets allowing it to charge Tri-County's proposed rate or providing Tri-County's voluntary commitment to make refunds beginning February 22, 2013. *Id.* at P 16. The Commission denied the request for a stay as moot. *Id*. at P 18.

Xcel sought rehearing and clarification, observing in part that the Commission had not addressed its position that the rates at issue were SPP's rates, not Tri-County's, and thus its request that SPP's rates be suspended and made effective subject to refund was within the Commission's jurisdiction. *See* Request for Rehearing and Request for Clarification at 4 (Mar. 25, 2013) ("2013 Reh'g Request").

The Commission denied rehearing and accepted SPP's compliance filing in which Tri-County agreed to pay forward looking refunds. *Sw. Power Pool, Order Denying Rehearing and Accepting Compliance Filing Subject to Further Compliance Filing* ("*Order III*"), 149 FERC ¶ 61,050 (2014). Rejecting Xcel's request for suspension of SPP's rates, the Commission stated that section 206 provided "the only remedy" at the time of Xcel's 2012 rehearing request. *Id.* at P 25. It stated it lacked authority to suspend rates retroactively and order refunds because of its "longstanding policy" that rate schedules cannot be suspended after they take effect, 18 C.F.R. § 2.4(a). *Id*. at P 28. It rejected Xcel's argument that there is an equitable presumption in favor of ordering refunds where the Commission erred as a matter of law because its "legal error" precedent was not on point as the Commission was not acting pursuant to a court remand. *Id*. at P 27.

In the meantime, an administrative law judge determined that Tri-County "ha[d] failed to carry its burden to prove that its facilities [included in exhibits to SPP's tariff filing] are Transmission Facilities eligible to be rolled into SPP's Zone 11

ATRR." *Sw. Power Pool, Initial Decision*, 143 FERC ¶ 63,003, at P 250 (2013). The Commission affirmed the *Initial Decision* on the same day it denied rehearing. *Sw. Power Pool, Opinion and Order on Initial Decision*, ORDER NO. 535, 149 FERC ¶ 61,051 (2014).

## II.

Xcel petitions for review of the Commission's three orders denying a refund of the unlawful rates it paid for eleven months, from April 1, 2012, to February 22, 2013. *See* FPA § 313(b), 16 U.S.C. § 825*l*(b). The court reviews the Commission's orders under the Administrative Procedure Act to determine whether the Commission's action is arbitrary and capricious or contrary to law. *See, e.g.*, *Sithe/Independence Power Partners v. FERC*, 165 F.3d 944, 948 (D.C. Cir. 1999). This is a deferential standard, *see Transmission Access Policy Study Grp. v. FERC*, 225 F.3d 667, 714 (D.C. Cir. 2000), but requires that the court at least assure itself that the Commission's reason for its decision is both rational and consistent with the authority delegated to it by Congress. *See* 5 U.S.C. § 706(2)(A) & (C); *see also Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42 (1983).

It is long-established that the "primary aim [of the FPA] is the protection of consumers from excessive rates and charges." *Mun. Light Bds. of Reading & Wakefield v. FPC*, 450 F.2d 1341, 1348 (D.C. Cir. 1971), *cert. denied*, 405 U.S. 989 (1972). Consistent with this purpose, the Commission has a general policy of providing refunds in the exercise of its remedial discretion. *Cf. Towns of Concord, Norwood, & Wellesley v. FERC*, 955 F.2d 67, 76 (D.C. Cir. 1992). In the context of section 205, the Commission implements these policies during its initial review of rate filings. Typically, where initial review has not shown the proposed rates are just and reasonable, the

Commission will suspend the rates and make them subject to refund while it conducts a section 205 review through hearing and settlement proceedings. *W. Tex. Utils. Co.*, 18 FERC ¶ 61,189, at 61,374 (1982); *Boston Edison Co.*, 12 FERC ¶ 61,211, at 61,516 (1980); *see Conn. Light & Power Co. v. FERC*, 627 F.2d 467, 471 (D.C. Cir. 1980). When a regional organization, such as an RTO, includes a non-jurisdictional entity and seeks a tariff revision based on that entity's ATRR, the Commission has followed the same procedure where a voluntary refund commitment is submitted with the RTO's proposed tariff revision. *See supra* note 1 and accompanying text. Here, the Commission has acknowledged that it erred as a matter of law in allowing SPP's proposed rates to take effect, contrary to section 205, without voluntary refund protection despite the acknowledged need for further section 205 review. The Commission nonetheless concluded that it was powerless to do more than order SPP, pursuant to section 206, to ensure prospective refunds because section 2.4(a) of its regulations barred suspension once SPP's rates took effect. *See Order III* at P 28. The Commission appears, from the record before the court, to have misapprehended its remedial powers and thus arbitrarily declined to weigh the equities underlying Xcel's request for retroactive relief.

First, as a threshold matter, to the extent the Commission denied Xcel relief because it lacks authority to order refunds from Tri-County, a non-jurisdictional entity, this was not responsive to Xcel's request. *See Order II* at PP 14–15; *Order III* at P 28 & n.43. (The same is true of such arguments as appear in the Commission's brief. *See, e.g.*, Resp't's Br. 35.) Xcel did not argue that the Commission has authority under the FPA to order refunds from Tri-County. Rather, Xcel argued that the Commission may exercise its remedial authority with respect to SPP, whose OATT was unlawfully inflated by Tri-County's ATRR, resulting in Xcel's subsidiary SPS paying unlawful rates

for eleven months. *See, e.g.*, 2012 & 2013 Reh'g Requests at 6 and 16, respectively. SPP's filing pursuant to section 205 submitted revisions to its tariff, albeit to implement Tri-County's ATRR. As Xcel has noted without contradiction by the Commission, SPP's proposed rates were filed by SPP, charged to SPP's customers by SPP, and were associated with service purported to be provided by SPP. SPS did not and does not take transmission service from Tri-County nor had any arrangement or other obligation to pay for Tri-County's non-jurisdictional tariffs. *See* Pet'r's Br. 27–28. The Commission acknowledged that:

> [A]s a regional transmission organization, SPP controls the transmission facilities that provide the services and has the OATT pursuant to which the services are provided, and thus SPP is the entity providing services, even if the relevant charges are ultimately traceable to [a non-jurisdictional entity] and even if they appear on SPP's invoices as line items and with no "mark up."

*SPP 2007*, 119 FERC ¶ 61,307, at P 14; *see also TANC*, 495 F.3d at 672; *MISO*, 135 FERC ¶ 61,131, at P 72.

Second, the Commission's reliance on section 2.4(a) of its regulations and related cases to deny Xcel retroactive relief is misplaced. *See Order III* at P 28. Xcel does not dispute that section 2.4(a) is a general prohibition against suspending a rate schedule in effect under a final order that was not the product of the Commission's legal error. *See generally United Gas Improvement Co. v. Callery Props., Inc*, 382 U.S. 223, 229 (1965). Rather, Xcel maintains that the applicability of section 2.4(a) is far from evident where no full section 205 review has occurred. The Commission relied on *Cooperative Power Ass'n v. FERC*, 733 F.2d 577, 580 (8th Cir. 1994), *reh'g denied*, 739 F.2d 390 (8th Cir. 1984), which upheld reliance on section 2.4(a)

to deny a retroactive rate suspension. *See Order III* at P 28 n.44. Xcel points out that the Eighth Circuit is the only court to have reviewed the Commission's application of section 2.4(a) and that on rehearing the court expressed doubt that the Commission lacked power on rehearing of an initial rate order to suspend the rate, but concluded, assuming the Commission had such power, that its denial in the circumstances was not an abuse of discretion. *See Coop. Power*, 739 F.2d at 392. Here, by contrast, the Commission has admitted its error of law in not adhering to section 205's mandate, and Xcel maintains it was tantamount to an abuse of discretion not to suspend SPP's rates despite concluding they may be unjust and unreasonable.

More telling still, the orders cited by the Commission that have applied section 2.4(a) to deny rehearing to suspend a rate are inapposite. *See Order III* at PP 25 n.36, 28 n.44 (citing *Dynegy Midwest Generation, Inc.*, 110 FERC ¶ 61,358, at P 5 (2005); *FirstEnergy Operating Cos.*, 86 FERC ¶ 61,152, at 61,543 n.12 (1999); *Consumers Energy Co.*, 80 FERC ¶ 61,316, at 62,077 (1997); *Illinois Power Co.*, 73 FERC ¶ 61,348, at 62,058 (1995); *Kentucky Power Co.*, 64 FERC ¶ 61,112, at 61,922 (1993)). In none of these cases did the Commission find that the proposed rates appeared to be unjust and unreasonable yet placed them in effect without refund protection. Each order involved a party intervening out of time to raise issues that could have been raised before the Commission issued its initial order placing the rate into effect. *See Dynegy*, 110 FERC ¶ 61,358, at PP 2–5; *Consumers Energy Co.*, 80 FERC at 62,077; *Illinois Power Co.*, 73 FERC at 62,057–58; *Kentucky Power Co.*, 64 FERC at 61,923. Xcel's protest was filed prior to the Commission's acceptance of SPP's OATT revisions in *Order I* and raised material factual issues, with supporting analysis, regarding whether Tri-County's facilities were qualified transmission facilities and whether its ATRR was overstated, and requested that the Commission delay the effectiveness of SPP's

proposed rates to conduct a section 205 review. Moreover, the Commission's legal error in accepting SPP's rates without suspension or refund protection is undisputed.

In seeking rehearing of *Order II*, Xcel argued as well that the Commission had authority under section 309 of the FPA to remedy its legal error and provide Xcel relief. *See* 2013 Reh'g Request at 16. Xcel referenced the Supreme Court's statement in analogous circumstances that "[a]n agency, like a court, can undo what is wrongfully done by virtue of its order," which was not final as it was still subject to judicial review. *United Gas Improvement Co.*, 382 U.S. at 229. Section 309 authorizes the Commission "to perform any and all acts, and to prescribe, issue, make, amend, and rescind such orders . . . as it may find necessary or appropriate to carry out the provisions of [the FPA]." 16 U.S.C. § 825h. It vests the Commission with broad remedial authority. *See Towns of Concord*, 955 F.2d at 73. Indeed, in examining the parallel provision in the Natural Gas Act, the court concluded that provision "unquestionably gives [the Commission] the authority, in fashioning remedies, to consider equitable principles, one of which is to regard as being done that which should have been done," and held the Commission could order abandonment authorizations of natural gas certificates to take effect retroactively, notwithstanding the Commission's objection that the statute did not permit retroactive authorizations. *N. Natural Gas Co. v. FERC*, 785 F.2d 338, 341 (D.C. Cir. 1986).

Still, the Commission dug in its heels, disclaiming any power or principle of equity to grant Xcel further relief, stating it could not act in a manner that was inconsistent with the statute where rates were accepted and have taken effect even to achieve what some parties have claimed is a more equitable result. *Order III* at P 27 (citing *Pub. Utils. Comm'n of Cal. v. FERC*, 988 F.2d 154, 168 n.12 (D.C. Cir. 1993)). For instance, the

Commission cited *City of Anaheim v. FERC*, 558 F.3d 521, 525 (D.C. Cir. 2009), which held that the Commission lacked authority to establish a retroactive effective date and refunds under section 206 because that provision only allowed the date to be "fix[ed]" prospectively. Xcel does not maintain the Commission erred in failing to apply section 206 retroactively but that it erred in failing to correct its legal error under section 205. The Commission has acknowledged that in allowing SPP's rates to take effect immediately without refund protection its action was contrary to section 205, *see Order III* at P 13. When the Commission acts contrary to the statute its action is *ultra vires*. *Cf. Ind. & Mich. Elec. Co.*, 502 F.2d 336, 343 (D.C. Cir. 1974). Further, neither *City of Anaheim* nor *Public Utilities Commission* speaks to the Commission's power under section 309 or its equivalent.

On appeal, the Commission, and intervenors SPP and Tri-County, rely on *Indiana & Michigan*, 502 F.2d at 343, where the court vacated an order suspending a rate, holding that the Commission had exceeded its statutory authority by delaying the effective date of rate filings beyond the period set in section 205. On rehearing, the court retroactively suspended the rates to allow the Commission to complete its section 205 review while protecting consumers. *See id.* at 343–44. To the extent intervenors SPP and Tri-County suggest that case is distinguishable because the court sought to avoid imposing surcharges on consumers, no precedent is cited, and we are aware of none, for the proposition that the Commission's equitable authority does not encompass refunds as well as surcharges. *See Nat. Gas Clearing House v. FERC*, 965 F.2d 1066, 1073 (D.C. Cir. 1992). Indeed, Xcel points to the example of *Cities of Batavia v. FERC*, 672 F.2d 64 (D.C. Cir. 1982), in which the court, concluding the Commission was mistaken about its authority to review part of an amended rate schedule, remanded for the Commission to determine "whether this [was]

an appropriate case in which to exercise its section 205 suspension and refund jurisdiction," *id*. at 77, even though the contested rate had already gone into effect. The Commission's response that in *Sea Robin Pipeline Co. v. FERC*, 795 F.2d 182, 187 (D.C. Cir.1996), the court clarified review was limited to the Natural Gas Act's parallel provision to section 206, avoids the central issue. *Sea Robin* simply held that the Commission lacks authority "to reject, post hoc, a previously accepted provision or to specify what should replace it." *Id*. Under the Commission's interpretation that it lacks any power to correct its legal error even where no section 205 review has occurred despite recognition it is needed, consumers are denied the protection that Congress mandated in section 205 without full recourse. *Cf. Nat. Gas Clearinghouse*, 965 F.2d at 1074. It is no answer to suggest that in enacting section 206 to provide only prospective relief Congress anticipated that there would be situations in which customers would not be made whole. *See* Resp't's Br. 27–28. At this point, it is unclear why the Commission has concluded Congress intended there would be no administrative remedy for the Commission's legal error in its initial rate order, an area where the Commission's consumer protection responsibilities are at their most fundamental, particularly when Congress provided remedial authority in section 309.

The Commission ignores what distinguishes the instant case, where it has conceded an error of law by failing, contrary to section 205's mandate, to ensure SPP's rates were just and reasonable before they took effect or provide refund protection. In a typical case, where the Commission exercises its section 205 authority to ensure consumer protection against unjust and unreasonable rates, Xcel is not contesting the applicability of section 2.4(a) of the Commission's regulations in denying retroactive relief where a rate schedule has been approved and taken effect in a final order. But where the Commission acknowledges that it acted contrary to section 205's mandate to

protect consumers against unjust and unreasonable rates, its initial rate order is *ultra vires* and the Commission cannot rationally ignore the different contexts in which it has refused to suspend existing rate schedules or its remedial authority in section 309.

Xcel observes that this court could exercise its equity power, *see* Pet'r's Br. 50, to respond to the "exigencies of the case" in order to eliminate "compelling" hardship from non-recoverable excessive rates, *Ind. & Mich.*, 502 F.2d at 345–46. Consideration of that option is premature. The Commission has yet to evaluate the equities of providing refund protection to recover unlawful rates resulting from its failure to adhere to section 205's mandate. On appeal, the Commission has expressed concern about under-recovery, which it states "there could be in this case," Resp't's Br. 33, but this was not the Commission's rationale in denying relief in *Orders II* or *III*. *See SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943); *see also State Farm*, 463 U.S. at 50.

Because the Commission's reliance on section 2.4(a) of its regulations as applied in its precedent is inapposite, and its position that its section 205 error of law is irremediable beyond prospective relief under section 206 appears irreconcilable with the authority Congress granted it in section 309 to remedy its errors, we grant the petition in part and remand the case to the Commission for appropriate action. *See Cities of Batavia*, 672 F.2d at 77. Xcel suggests that the remedy it seeks would not involve a change to the originally granted effective date for the SPP rates of April 1, 2012, and that there is no reason to presume the necessary correction to *Order I* would contravene the FPA, inasmuch as parties were on notice the SPP rate is tentative and may be adjusted with retroactive effect. *See* Pet'r's Br. 40–41 (citing *NSTAR Elec. & Gas Corp. v. FERC*, 481 F.3d 794, 801 (D.C. Cir. 2007)). We leave these issues for the Commission to

address as may be appropriate on remand. *See Tenn. Valley Mun. Gas Ass'n v. FPC*, 470 F.2d 446, 452–53 (D.C. Cir. 1972); *see also Exxon Co., USA v. FERC*, 182 F.3d 30, 49–50 (D.C. Cir. 1999).