# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued December 2, 2016         Decided August 8, 2017

No. 14-1063

LOUISIANA PUBLIC SERVICE COMMISSION,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

MISSISSIPPI PUBLIC SERVICE COMMISSION, ET AL.,
INTERVENORS

———

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

———

*Michael R. Fontham* argued the cause for petitioner. With him on the briefs were *Paul L. Zimmering* and *Noel J. Darce*.

*Lona T. Perry*, Deputy Solicitor, Federal Energy Regulatory Commission, argued the cause for respondent. With her on the brief was *Robert H. Solomon*, Solicitor.

*Clifford M. Naeve* argued the cause for intervenors supporting respondent. On the brief were *John S. Moot*, *Matthew W.S. Estes*, *Gregory W. Camet*, *Glen Ortman*, *Dennis Lane*, and *Paul Randolph Hightower*. *Adrienne E. Clair* entered an appearance.

Before: ROGERS, KAVANAUGH and WILKINS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* WILKINS.

WILKINS, *Circuit Judge*: This case continues a lengthy saga of litigation dealing with the allocation of production costs among Entergy Corporation's utility operating companies ("Operating Companies"). During the period relevant here, Entergy[1] sold electricity, both wholesale and retail, in Arkansas, Louisiana, Mississippi, and Texas, through five Operating Companies under the framework provided by the Entergy System Agreement. The System Agreement sets forth a rate schedule administered by the Federal Energy Regulatory Commission ("FERC") that allocates certain costs among the Operating Companies and seeks to maintain rough equalization of those costs among them. In *Louisiana Public Service Commission v. FERC* ("*LPSC*"), 522 F.3d 378 (D.C. Cir. 2008), we affirmed FERC's imposition of a so-called "bandwidth" remedy ("Bandwidth Remedy" or "Remedy") to address unjust allocations of production costs among the Operating Companies and return them to "rough equalization." We remanded to FERC, however, to address, among other things, its decision to delay the effective date of the Remedy until January 2006 when FERC had decided the Remedy was necessary in June 2005. The Louisiana Public Service Commission ("LPSC") petitions this Court for review of FERC's decision on remand.

---

[1] We use "Entergy" in this Opinion to refer to either Entergy Corporation (the corporate parent of the Operating Companies and their affiliates) or Entergy Services, Inc. (a service affiliate that has acted on behalf of the Operating Companies in various FERC proceedings).

## I.

We described the relevant background at length in *LPSC* and we recount it only briefly here. In Opinion No. 480, issued on June 1, 2005, FERC determined that cost allocations under the System Agreement were unjust and unreasonable, and announced the Bandwidth Remedy to cure the disparities going forward. *See La. Pub. Serv. Comm'n v. Entergy Servs., Inc. et al.*, 111 F.E.R.C. ¶ 61,311 (2005) ("Op. No. 480"), *on reh'g*, 113 F.E.R.C. ¶ 61,282 (2005) ("Op. No. 480-A"). The Remedy provides that when an Operating Company's production costs deviate more than 11 percent above or below the Entergy System's average on an annual basis,[2] the Operating Companies with the lower costs will make payments ("Bandwidth Payments" or "Payments") to the ones with higher costs such that their overall costs return to rough equalization. Op. No. 480, 111 F.E.R.C. ¶ 61,311, at 62,372. At the outset, FERC ordered that the Remedy be implemented prospectively and declared it would be "effective" in 2006. *Id.* at 62,373. FERC later clarified that the first of any Bandwidth Payments would be made in 2007, once a full year of 2006 cost data was available. Op. No. 480-A, 113 F.E.R.C. ¶ 61,282, at 62,140. Such data is reported in Entergy's annual Form 1 filed with FERC each April, covering the previous calendar year.

FERC envisioned the first set of Bandwidth Payments would be calculated and exchanged as follows: in April 2007, Entergy would report the production costs of each of the Operating Companies for the 2006 calendar year in its Form 1. Based on that data, Entergy would use a formula to determine whether any Operating Company's production costs exceeded the established bandwidth. If so, Bandwidth Payments based

---

[2] This range – from 11 percent above average to 11 percent below average – is the "bandwidth," hence the term "Bandwidth Remedy."

on 2006 data would be exchanged thereafter, but no later than December 2007, to eliminate any severe disparities. The process would repeat the following year, with Entergy determining in 2008 to what extent Bandwidth Payments should be exchanged based on 2007 production cost data. Putting aside certain disputes about the formula used, LPSC acknowledges that Payments were made in 2007 based on 2006 disparities, and again in 2008 based on 2007 disparities.

In *LPSC*, we held that FERC's "remedial choice" of the Bandwidth Remedy was a lawful way to return the Entergy System to rough equalization of its production costs. 522 F.3d at 391. But we remanded to FERC to address certain issues with its implementation. Of particular relevance here, we determined that FERC would need to explain its decision to delay implementation of the Bandwidth Remedy to a later date – *i.e.*, making it "effective" January 1, 2006 with Payments commencing in 2007 – when it found that as of June 1, 2005, the cost allocations under the System Agreement were unjust and unreasonable. *See id.* at 400.

On remand, FERC advanced the "effective date" of the Bandwidth Remedy from January 1, 2006 up to June 1, 2005, and ordered that Bandwidth Payments be exchanged based on production cost disparities that occurred in the June – December 2005 period. *See La. Pub. Serv. Comm'n v. Entergy Servs., Inc. et al.*, 137 F.E.R.C. ¶ 61,047 (2011) ("Order on Remand"); *La. Pub. Serv. Comm'n v. Entergy Servs., Inc. et al.*, 146 F.E.R.C. ¶ 61,152 (2014) ("Reh'g Order"). FERC explained that although the agency initially contemplated that the Remedy would apply to cost data on an annual basis, it made an exception for the 7-month period now lodged between the old and new "effective" dates of the Remedy – *i.e.*, the period from June 1, 2005 through December 31, 2005. Reh'g

Order, 146 F.E.R.C. ¶ 61,152, at 61,624-25. It ordered the Remedy to be applied to that period. *Id.* at 61,625-26.

In the instant case, LPSC is satisfied with FERC's decision that the Remedy should begin as of June 1, 2005, but it challenges the way in which the Remedy has been implemented. Specifically, LPSC claims that FERC neglected to provide a remedy for a portion of the post-2005 period and that FERC engaged in unlawful retroactive ratemaking with respect to its application of the Remedy to the June – December 2005 period.[3]

## II.

We review FERC's orders under the Administrative Procedure Act's "arbitrary and capricious" standard. *Sithe/Independence Power Partners, L.P. v. FERC*, 165 F.3d 944, 948 (D.C. Cir. 1999). The "scope of review under [that] standard is narrow." *Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). As we explained in *LPSC* when approving FERC's selection of the Bandwidth Remedy, "[T]he breadth of agency discretion is, if anything, at zenith when the action assailed relates primarily . . . to the fashioning of policies, remedies and sanctions." 522 F.3d at 393 (quoting *Niagara Mohawk Power Corp. v. FPC*, 379 F.2d 153, 159 (D.C. Cir. 1967)). Similarly, we owe FERC "great deference" in fashioning electricity rate design. *FERC v. Elec. Power Supply Ass'n*, 136 S. Ct. 760,

---

[3] In its petition for review, LPSC also challenged FERC's decision on remand regarding Section 206 refunds for the September 2001 – May 2003 effective period. FERC has since requested that we remand this issue to FERC in light of our more recent decision in *Louisiana Public Service Commission v. FERC*, 772 F.3d 1297 (D.C. Cir. 2014). We agree that FERC should reconsider this issue and remand to FERC for further proceedings.

782 (2016), *as revised* (Jan. 28, 2016) (quoting *Morgan Stanley Capital Grp. Inc. v. Pub. Util. Dist. No. 1*, 554 U.S. 527, 532 (2008)). "A court is not to ask whether a regulatory decision is the best one possible or even whether it is better than the alternatives." *Id.* Rather, we ask whether the agency has "examined the relevant considerations and articulated a satisfactory explanation for its action, including a rational connection between the facts found and the choice made." *Id.* (quoting *State Farm*, 463 U.S. at 43) (alterations omitted).

## III.

LPSC contends that, on remand, FERC eliminated a 7-month delay (*i.e.*, by providing a remedy for June to December 2005) but still left open a 17-month gap (*i.e.*, January 2006 to May 2007[4]) to which it asserts FERC failed to apply the Bandwidth Remedy. At first glance, this argument appears to contradict LPSC's acknowledgment that Bandwidth Payments have been exchanged based on all production cost disparities from June 1, 2005 onward. But LPSC's challenge stems primarily from a disagreement with FERC about what it means for the Remedy to be "effective."

When FERC said the Remedy was "effective" January 1, 2006, that meant production cost disparities would be roughly equalized from that date forward, with Payments commencing once the prior year's data had been collected. In LPSC's view, however, the Remedy could not effectuate the "just and reasonable rate" under 16 U.S.C. § 824e(a) until Payments were exchanged – only then could the proper rate be "thereafter observed and in force." As such, FERC's original

---

[4] This is the gap between the 2005 period addressed on remand and the date the first set of Bandwidth Payments were exchanged as originally contemplated by FERC.

announcement in Opinion No. 480 that the Bandwidth Remedy would be "effective" in 2006 was a "fiction" because no Payments were made until June 2007. Pet'r Br. 34, 42. Under that premise, LPSC sought on remand to have the Remedy (theoretically) begin with Payments in 2005 based on 2004 data, Payments in 2006 based on 2005 data, and so on, until the purported "two year delay" was resolved. *See* Reh'g Order, 146 F.E.R.C. ¶ 61,152, at 61,625.

FERC addressed this point on remand, explaining there was simply no basis for LPSC's assertion that FERC was required to provide a remedy for a "two year delay" or Payments based on disparities occurring in "calendar years 2004 and 2005." *Id.* FERC correctly observed that this Court's decision ordering remand did not provide the directive sought by LPSC. *Id.* at 61,625-26.

LPSC relies here – as it did before FERC – on a reference in *LPSC* to the delay of the Bandwidth Remedy "until 2007," 522 F.3d at 400, as an endorsement of its view that the Remedy does not begin until Bandwidth Payments commence. In that decision, although we took issue with the unexplained delay of the Remedy beyond June 2005, we did not purport to resolve the outer bound of that delay. *See id.* In any event, we understood the "effective" date of the Remedy was January 1, 2006, even though Payments would not commence until 2007. *See, e.g.*, *id.* at 388, 399. Read in its proper context, our reference to 2007 simply did "not tak[e] sides in any dispute" over the meaning of the effective date of the Bandwidth Remedy. *AT&T Wireless Servs., Inc. v. FCC*, 365 F.3d 1095, 1103 (D.C. Cir. 2004).

On remand, rather than attempting to offer an explanation for delaying the Remedy to a date beyond June 2005, FERC sought to cure it by advancing the "effective date" to June 1,

2005. Order on Remand, 137 F.E.R.C. ¶ 61,047, at 61,214-15. In doing so, FERC reiterated its conceptualization of the Bandwidth Remedy as one that would come into play only "if the Entergy System exceeded historical cost disparities" – that is, if any Operating Company has production costs more than 11 percent above or below the Entergy System average. *Id.* at 61,210; *see also* Op. No. 480, 111 F.E.R.C. ¶ 61,311, at 62,356. In practice, that meant the Remedy would be "effective" in 2006 but Payments would only be triggered if severe production cost disparities existed among the Operating Companies across the entire year – a determination that would not be made until after that year's end. *See* Reh'g Order, 146 F.E.R.C. ¶ 61,152, at 61,625-26. On remand, FERC explained that Payments had already been exchanged for 2006 and 2007 production cost disparities, and thus there was no basis for LPSC's contention that FERC had left a "two year delay" unresolved. *Id.* at 61,625 ("[T]he 2006 calendar year's data is accounted for under the bandwidth formula th[r]ough payments the following year. Similarly, the 2007 calendar year's data is roughly equalized through payments commencing in 2008."). LPSC offers no basis for undermining the great deference we owe to FERC in fashioning the Bandwidth Remedy the way it did.

LPSC claims that FERC's explanation on remand is "specious" because it deviates from the way FERC typically designs formula rates. Pet'r Br. 31. But FERC confronted an unusual problem here – one that is only highlighted by LPSC's comparison of this case to *Louisiana Public Service Commission v. FERC*, 482 F.3d 510 (D.C. Cir. 2007). There, we held that it was unlawful for FERC to continue to allow any amount of "interruptible load" to be included in cost allocations among the Operating Companies after FERC determined that such inclusion resulted in an unjust and unreasonable rate. *See id.* at 514, 518. However, the Bandwidth Remedy evaluates

total production costs for disparities among the Operating Companies at year's end – there is no factor comparable to interruptible load that can be preemptively controlled for to maintain a just and reasonable rate going forward. To the extent LPSC asserts the Remedy should have used historical disparities as a proxy for future ones, we are mindful of our obligation to refrain from asking "whether a regulatory decision is . . . better than the alternatives," as long as the agency gives a "satisfactory explanation" for its decision. *Elec. Power Supply Ass'n*, 136 S. Ct. at 782. We have reviewed LPSC's remaining arguments challenging FERC's decision to proceed as it did on remand and find they are all without merit.

On remand, FERC retroactively applied its Remedy such that it cured any severe disparities from June 1, 2005 onward. LPSC does not dispute that, prior to FERC's final decision on remand, the Bandwidth Remedy (as conceived of by FERC) had been applied and Payments exchanged based on cost data from 2006 and 2007 – the period it claims FERC has neglected.[5] Nor does it dispute that FERC applied the Remedy to the June – December 2005 period on remand. Thus, any severe production cost disparities that post-date June 2005 have been accounted for with Bandwidth Payments, and we agree with FERC that there was nothing left for it to resolve on remand. Accordingly, LPSC's petition is denied with respect to FERC's advancement of the effective date to the 2005 period.

---

[5] To the extent LPSC claims that "[t]he 2007 payments and receipts did nothing to remedy undue discrimination in 2006," it is taking issue with the fact that the Bandwidth Remedy was not structured to use prior year data as a proxy for disparities going forward, and instead Payments were not exchanged until 2007. Pet'r Br. 34.

**IV.**

LPSC also challenges the particular formula FERC applied to the 2005 period, arguing FERC engaged in unlawful retroactive ratemaking. To be sure, LPSC does not object to FERC's altering the "effective date" of the Bandwidth Remedy to cure disparities in the previously-overlooked 2005 period. Indeed, that is the result LPSC urged. That result is also consistent with FERC's ample authority to remedy its own errors after being reversed in court, notwithstanding the prohibition on retroactive ratemaking. *See, e.g.*, *Pub. Utils. Comm'n v. FERC*, 988 F.2d 154, 162 (D.C. Cir. 1993); *see also Xcel Energy Servs. v. FERC*, 815 F.3d 947, 955-56 (D.C. Cir. 2016).[6]

Rather, LPSC contends that FERC should have retroactively applied to that period the methodology announced in Opinion No. 480 in June 2005 (which was not to go into effect until January 2006), instead of the methodology later integrated into the System Agreement in 2006. LPSC agrees that if the 2006 formula "had adhered to" the one announced in Opinion No. 480, FERC's decision on remand "would be lawful." Pet'r Br. 57. However, when presented with the 2006 methodology, FERC determined that it did adhere to the one announced in Opinion No. 480. *See La Pub. Serv. Comm'n v. Entergy Servs., Inc.*, 117 F.E.R.C. ¶ 61,203, at 62,000-01 (2006), *on reh'g*, 119 F.E.R.C. ¶ 61,095 (2007), *aff'd, La. Pub. Serv. Comm'n v. FERC*, 341 Fed. App'x 649 (D.C. Cir. 2009). As we previously held, LPSC waived any dispute it had with that conclusion by failing to raise it in the compliance

---

[6] *City of Anaheim v. FERC* does not control the outcome here because, in that case, FERC was not "responding to a court decision when it imposed retroactive surcharges." 558 F.3d 521, 525 (D.C. Cir. 2009).

proceedings. *See La. Pub. Serv. Comm'n v. FERC*, 606 F. App'x 1, 5 (D.C. Cir. 2015). In sum, there is no basis for LPSC's contention that FERC engaged in unlawful retroactive ratemaking. Accordingly, we deny its petition as to the application of the Bandwidth Remedy to the 2005 period.

## V.

For the foregoing reasons, LPSC's petition for review of FERC's decisions regarding the implementation of the Bandwidth Remedy to the June 2005 – May 2007 period is denied. We grant FERC's request to remand to FERC for further consideration of the denial of Section 206 refunds for the September 2001 – May 2003 effective period.

*So ordered.*